UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

vs.

DESMOND REGINALD RODGERS,

                    Defendant.

_____/

Criminal No. 11-cr-20481

Hon. Arthur J. Tarnow


**DESMOND REGINALD RODGERS' MOTION FOR COMPASSIONATE
RELEASE UNDER 18 U.S.C. §3582(c)(1)(A)**

John F. Clark
Attorney for Desmond Reginald Rodgers
Clark Law Firm PLLC
645 Griswold, Suite 2200
Detroit, MI 48226
Ph: 313-962-2233
clarkjf1@gmail.com

## DESMOND REGINALD RODGERS' MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. §3582(c)(1)(A)

Now comes defendant, Desmond Reginald Rodgers, by his attorney, and requests that his sentence be reduced pursuant to 18 U.S.C. §3582(c)(1)(A)(i), and other authorities cited herein.  In support of this request, he states the following:

1.  For the reasons more fully explained in the attached Brief in Support, Rodgers moves for a reduced sentence to time served under 18 U.S.C. §3582(c)(1)(A)(i), primarily due to his medical conditions, his increased susceptibility to a more severe COVID-19 illness and the pertinent factors in 18 U.S.C. §3553(a).

2.  In the alternative, Rodgers requests that the Court reduce his sentence of imprisonment to time served and add a special condition to his term of supervised release such that the beginning of his term is served initially in home confinement.

3.  Concurrence in this motion has been sought pursuant to E.D. Mich. L.R. 7.1(a).  Undersigned counsel certifies that he exchanged emails with counsel for the Government, Danielle Asher (on October 1, 2020), explaining the nature of the relief to be sought by way of this motion, and seeking concurrence in the relief, and concurrence was denied.

1

WHEREFORE, Defendant Desmond Reginald Rodgers requests the Court grant his Motion for Compassionate Release.

Respectfully submitted,

By: s/ John F. Clark
John F. Clark (P69677)
Attorney for Defendant
Desmond Reginald Rodgers
Clark Law Firm PLLC
645 Griswold, Suite 2200
Detroit, MI 48226
Ph: 313-962-2233
Date: October 13, 2020          clarkjf1@gmail.com

**BRIEF IN SUPPORT OF DESMOND REGINALD RODGERS' MOTION
FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. §3582(c)(1)(A)**

By now, the scale of the global pandemic of COVID-19 disease caused by
the SARS-CoV-2 coronavirus has been well documented, to say the least.  "The
COVID-19 pandemic is extraordinary and unprecedented in modern times in this
nation. It presents a clear and present danger to free society for reasons that need
no elaboration."  United States v. Hernandez, 451 F.Supp.3d 301, 303 (S.D. N.Y.
2020).  While some infected with this virus obtain only minor or moderate
symptoms – or even remain asymptomatic – others contract severe illness.  Those
with certain underlying conditions, like Desmond Reginald Rodgers, remain at a
higher risk for such complications.  For this reason and those that follow, Rodgers
moves for compassionate release from his term of incarceration.

## I.

### Introduction

Rodgers previously pled guilty to Counts 2, 3 and 4 of the First Superseding
Indictment: three aiding and abetting offenses for a bank robbery (18 U.S.C.
§§2113(a) and 2), brandishing a firearm during and in relation to a crime of
violence (18 U.S.C. §§924(c) and 2) and a pharmacy robbery (18 U.S.C.
§§2118(a) and 2).  (1st Sup. Indictment, R. 23, Page ID#103-105; Plea Agreement,

R. 221, Page ID#2213-2215).  He was sentenced to an aggregate term of 200

months, comprised of 116 months running concurrent on Counts 2 and 4 and 84

months (consecutive to 2 and 4) on Count 3.  (Judgment, R. 126, Page ID#457).

Judgment was entered on September 12, 2012.  (Id., Page ID#455).  No direct

appeal was filed and a motion under 28 U.S.C. §2255 was subsequently denied.

(Order, R. 225, Page ID#2301-2313).

Rodgers has been incarcerated since September 27, 2011, having been

detained pretrial.  (PSIR, p. 1).  He is projected to be released on January 4, 2026

and has served 62.8% of his statutory term (current as of 9/14/2020).  (Ex. A-004).

## II.

### Jurisdiction has Vested – Rodgers Has Exhausted His Administrative Remedies and His Second or Successive 28 U.S.C. §2255 Authorization Request Does Not Divest Jurisdiction Either

The mandate of 18 U.S.C. §3582(c)(1)(A) requires Rodgers, prior to filing

this motion, to either exhaust his administrative remedies or let at least 30 days

lapse from the filing of an internal request for release.  This statutory requirement

for motions for compassionate release, typically analyzed under §3582(c)(1)(A),

states as follows:

> "[t]he court may not modify a term of imprisonment once it has been
> imposed except that–

(1) in any case–

>      (A) the court, upon motion of the Director of the Bureau of Prisons,
>      or upon motion of the defendant after the defendant has fully
>      exhausted all administrative rights to appeal a failure of the Bureau of
>      Prisons to bring a motion on the defendant's behalf or the lapse of 30
>      days from the receipt of such a request by the warden of the
>      defendant's facility, whichever is earlier, may reduce the term of
>      imprisonment (and may impose a term of probation or supervised
>      release with or without conditions that does not exceed the unserved
>      portion of the original term of imprisonment), after considering the
>      factors set forth in section 3553(a) to the extent that they are
>      applicable, if it finds that--
>
> >          (i) extraordinary and compelling reasons warrant such a
> >          reduction;
> >                                   * * *
> >          and that such a reduction is consistent with applicable
> >          policy statements issued by the Sentencing Commission"

Here, jurisdiction pursuant to statute is vested, since more than 30 days have run since Rodgers submitted his request for release to the Warden of USP Lee, where he is currently imprisoned.

Rodgers submitted an email on September 11, 2020 which was apparently construed as a request for compassionate release. When the September 11 email was forwarded to a "Felicia Calton" on September 16, the forwarding party (unidentified, except as coming from a mailbox titled "Lee/Inmate to Warden") stated "[p]rocess compassionate release request." (Ex. B-002-003). The Warden of USP Lee denied the request on September 28, 2020. (Ex. C-002).

It should be noted the Warden's denial states that Rodgers' request was also received on September 28, 2020, but Rodgers submits that is in error. It appears the September 11 email is the operative request; the September 16, 2020 email appeared to interpret it as so. (Ex. B-002-003). Using the September 11 email as the operative date, more than 30 days have lapsed since Rodgers submitted his request – the date of filing of this Motion is day 32.

And, while it is unclear if an administrative appeal of that denial has been filed[1], such an appeal is not required for exhaustion. United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020). While Alam eliminated certain prior exhaustion exceptions when the Government invokes mandatory "claim processing rules", it did not mandate exhaustion efforts go further than the defendants' initial requests, regardless of "appeals available to them". Alam, 960 F.3d at 834 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them."). Accordingly, the Court has jurisdiction to hear this Motion under §3582(c)(1)(A).

Additionally, jurisdiction is vested for another reason. Even though Rodgers has a pending authorization request for a successive 28 U.S.C. §2255 motion in the Sixth Circuit under §2255(h), such a request does not divest this

---

[1] Rodgers reports that he asked the Warden for reconsideration of the denial.

Court of jurisdiction for purposes of this Motion. See: In Re: Desmond Reginald Rodgers, U.S. Ct. App. 6th Cir. No. 20-1519. In In re: Booker, 797 Fed. Appx. 959, 962 (6th Cir. 2020), the Court found that the denial on jurisdictional grounds of certain motions in the district court, filed subsequent to (what was then a pending) second or successive authorization request, was erroneous. Jurisdiction was not divested during the authorization period.

> "The district court erroneously concluded that it lacked jurisdiction to consider Booker's motions based on a motion for authorization to file a second or successive § 2255 petition that was pending before this court. A motion for authorization to file a second or successive § 2255 petition is not a notice of appeal. A notice of appeal is filed in the district court. Fed. R. App. P. 3(a)(1). A motion for authorization to file a second or successive § 2255 petition, however, is properly filed in the appropriate court of appeals. See Rules Governing § 2255 Cases, Rule 9; see also 28 U.S.C. §§ 2255(h), 2244(b)(3)(A). As a result, Booker's pending motion for authorization did not divest the district court of jurisdiction to consider his subsequent motions."

In re: Booker, 797 Fed. Appx. at 962. Since a Circuit Court of Appeals must first authorize the filing of a successive §2255 before one proceeds in the district court, this lack of initiation of Rodgers' Sixth Circuit authorization request by filing of a notice of appeal has "jurisdictional significance". "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S.

56, 58, 103 S.Ct. 400 (1982).

But, even the filing of such a notice would not be totally prohibitive for jurisdictional purposes if an appeal was from wholly different issues than those subsequently raised.  If Rodgers' pending Sixth Circuit action was an appeal from a §2255 order (which it's not), at least one district court within our Circuit has found jurisdiction still is vested for a §3582(c) motion when the sentence reduction issues were unrelated to the §2255 appeal.  United States v. Hunter, 2020 WL 127711 at *1, fn.1 (S.D. Ohio 2020) (Government argued that the court lacked "jurisdiction to decide the 3582(c)(1)(A) Motion due to [defendant] previously filing a notice of appeal concerning denial of a 28 U.S.C. §2255 motion... The Court finds that ... , the matter presented in the 3582(c)(1)(A) Motion is not encompassed by the notice of appeal at issue concerning denial of the 28 U.S.C. §2255 motion.").

For these reasons, Rodgers submits that jurisdiction to decide this Motion is vested in this Court.

### III.

### The Factors in 18 U.S.C. §3553(a) and U.S.S.G. §1B1.13 Support a Reduction of Rodgers's Sentence

The text of §3582(c)(1)(A)(i) states that modification of a sentence may be

granted by the Court upon consideration of "the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that – (i) extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission..."  Mr. Rodgers avers that there are "extraordinary and compelling reasons" to warrant compassionate release consistent with the Commission's policy statements and 18 U.S.C. §3553(a).

Certain courts have held that the "applicable policy statements" noted in §3582(c)(1)(A)(i) are those found in the commentary to U.S.S.G. §1B1.13, which addresses reductions in sentences and specifically what is meant by "extraordinary and compelling".  See, e.g., United States v. Reddy, 2020 WL 2320093 at *6 (E.D. Mich. 2020).  In Application Note 1 to §1B1.13, the "[e]xtraordinary and [c]ompelling [r]easons", in pertinent part, are stated as follows:

"1.     Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)     Medical Condition of the Defendant.—

(i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include

9

metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)      The defendant is—

(I)      suffering from a serious physical or medical condition,

(II)      suffering from a serious functional or cognitive impairment, or

(III)      experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

* * *

(D)      Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

Even though Rodgers can meet this standard for a sentence reduction, the §1B1.13 App. Note 1 framework may not be so limiting.  The Second Circuit recently found that this rubric was "outdated" since the §1B1.13 statements refer to motions brought by the BOP and thus, district courts were not limited by §1B1.13.  United States v. Zullo, __F.3d__, 2020 WL 5739712 (2d Cir. 2020) ("...the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in

motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").  The <u>Zullo</u> Court noted that the "now-outdated" commentary language in the current version of the Guidelines still referred to determinations made "by the Director of the Bureau of Prisons".  <u>Zullo</u>, 2020 WL 5739712 at *3-*4; see e.g., §1B1.13, App. Note 1.(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

Whether considering §3582(c)(1)(A)(i) using the factors of App. Note 1.(A) and (D), or as more broadly interpreted by the Second Circuit, Rodgers has serious medical conditions, combined with the §3553(a) factors and "other reasons", to warrant his release on "extraordinary and compelling" grounds.

### A.    Mr. Rodgers's Health Conditions Put Him at Greater Risk for a Severe COVID-19 Illness

Mr. Rodgers has risk factors which put him at a higher risk for serious COVID-19 complications as well as those that may, including obesity, hypertension and prediabetes.

Rodger's body mass index ("BMI") qualifies him as obese, one of the risk

11

factors.  His most recent weight measurement in the records is from June 12, 2020 and shows a weight of 231.2 pounds.  (Ex. D-009).  With a height of 5'11 (Ex. D-021), this is a BMI of 32.2, which qualifies as obese in the eyes of the Centers for Disease Control ("CDC").  This factor increases the likelihood of Rodgers contracting a severe complication from COVID-19.  "Having obesity, defined as a body mass index (BMI) between 30 kg/m and 40 kg/m or severe obesity (BMI of 40 kg/m2 or above), increases your risk of severe illness from COVID-19." CDC, "Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions", www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions /people-with-medical-conditions.html.

Hypertension is another current diagnosis in Rodgers' medical history.  The CDC finds that hypertension "might" present an increased risk for severe COVID-19 illness.  Id.  While records reflect his medication appears to be controlling the hypertension, this is a long term condition for Rodgers, with the PSIR noting in April, 2012 that Rodgers reported being on medication for it even at that time. (Ex. D-010; PSIR, p. 16, ¶¶64-65).

Additionally, Rodgers also has been diagnosed with prediabetes.  (Ex. D-011).  Records reflect Hemoglobin A1C scores as either being within the prediabetes/ increased risk range, or just below it.  (Ex. D-011, 017, 024, 026,

028).  While the Government has argued in other cases that prediabetes is not a recognized COVID-19 risk factor (unlike diabetes itself), prediabetes has still been considered among the combined health conditions warranting a reduction in sentence.  See, e.g., United States v. Wren, 2020 WL 5087978 at *1-*2 (E.D. Mich. 2020); United States v. Readus, 2020 WL 2572280 at *3 (E.D. Mich. 2020) (collecting cases).

Mr. Rodgers also has certain mental health issues for which he is taking medication, including major depressive disorder and anxiety.  He has been "compliant with taking and refilling" these medications.  (Ex. D-002).  As discussed further infra, these feelings have been rooted, at times, in the stress of his wife's death and his inability to care for his twin sons.  (Ex. D-018).

Mr. Rodgers takes medications for his hypertension, anxiety and depression, as well as for osteoarthrosis ("...a common disorder of synovial joints", according to the National Institute of Health).  NIH, "Osteoarthrosis", www.ncbi.nlm.nih.gov /pmc/articles/PMC2153568/.  A list of Rodgers other current health conditions and medications is attached.  (Ex. D-010-014).

These conditions (in combination or even as to obesity alone) put Rodgers at greater risk for severe illness.  And, like the defendant in Alam, and many other inmates, "he has ample reason to fear that a prison exacerbates those risks."  Alam,

960 F.3d at 832.  As of October 8, 2020, USP Lee has 6 known positive cases of

COVID-19.  Bureau of Prisons, "COVID-19", www.bop.gov/coronavirus/.  But, at

least one court has found that, due to inadequate testing, this number may not be

representative of the actual caseload.  "The Court finds that USP Lee is seriously

undertesting its inmates as the facility houses 1,250 inmates the USP and only 181

inmates have been tested."  United States v. Bell, 2020 WL 4698317 at *2 (C.D.

Ill. 2020) (August 13, 2020; citation omitted).

Not much has changed at Lee in the two months since Bell – the total

number of completed and pending tests is now 363 (as reported on October 12,

2020). www.bop.gov/coronavirus/.

These combined conditions alone warrant release for Rodgers.  United

States v. White, 2020 WL 2557077 at *3 (E.D. Mich. 2020) (motion granted;

"Given White's combination of underlying illnesses – hypertension and obesity –

he is at risk of suffering dire medical consequences if he contracts COVID-19...").

But, there are other extraordinary and compelling reasons as well.

**B.    Rodgers' Rehabilitative Efforts, Considered under Pepper v. United States, 562 U.S. 476, 481, 131 S.Ct. 1229 (2011), Mitigate Any Alleged Community Safety Issues**

Using the pretrial release factor analysis in 18 U.S.C. §3142(g), the

Government may argue there are community safety issues "that would be posed

14

by" granting this Motion. "Dangerousness" is not a prohibitive condition by statute under §3582(c)(1)(A)(i), but rather a relevant consideration under §3553(a)(2). United States v. Price, 2020 WL 5440164 at *2 (E.D. Mich. 2020).

Regardless, any alleged danger to the community is diminished for multiple reasons, primary among them is Rodgers' institutional record of rehabilitation.

While such post-conviction rehabilitation efforts are typically relevant in resentencings after reversal, these considerations are also relevant in motions under §3582(c)(1)(A). Pepper v. United States, 562 U.S. 476, 481, 131 S.Ct. 1229 (2011) ("We hold that when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range."); United States v. Sain, 2020 WL 5906167 at *4 (E.D. Mich. 2020) (Order granting compassionate release motion; "The government asks the Court to view Sain in the same light as if it was 2007. But Sain has not been in a time bubble for nearly 13 years, and Pepper v. United States, 562 U.S. 476, 490-93 (2011), allows the Court to consider post-sentencing rehabilitation efforts in re-sentencing."); see also United States v. Greenwood, 521 Fed.Appx. 544, 547 (6th Cir. 2013) (review of motion under §3582(c)(2); "[t]he court *may*, but *is not*

15

required to, consider a defendant's post-sentencing conduct.") (emphasis in original). And, particularly relevant are these post-conviction efforts for Desmond Rodgers, in the areas of employment and education – and the lack of any disciplinary infractions for over seven years.

First, despite his physical and mental health issues, Rodgers' has risen through the culinary ranks in his employment in the kitchen. As noted in Rodgers' Summary Reentry Plan, his work assignment (at the time of the report) was in the kitchen. "Rodgers is currently assigned to the kitchen where he earns good work evaluations. He has previously worked in commissary, as a unit orderly, and numerous food service positions." (Ex. E-002). But, this summary barely scratches the surface of Rodgers' experience – he reports that he had risen to a Grade 1 culinary position at both his current facility, USP Lee, as well as his former, USP Big Sandy. This "Grade 1", effectively a head cook position, is nearly the highest position one can achieve working in the kitchen – a type of chef de cuisine to the executive chef. Rodgers reports having handled most, if not all, culinary positions in the kitchen. He states he has cooked both in the kitchen serving the officers' dining room as well as the kitchen serving the larger prison populace. At his former prison, USP Big Sandy, working in the main kitchen meant putting approximately 1,200-1,300 meals per day on the table. This

16

experience, gained over the course of his years incarcerated, has given Mr. Rodgers a developed skill which he hopes to further when released.

While Rodgers reports having recently been let go from his position in the kitchen due to a reported disagreement about procedural issues, this event reportedly did not result in a formal disciplinary action and does not diminish his exemplary historical record.

Second, Rodgers disciplinary record is notable – for its brevity, that is.  He has not had any infractions in more than seven years (as of 9/14/20).  "Rodgers has maintained clear conduct for over seven years."  (Exs. E-003; F-002).

Lastly, Rodgers has worked to further his education as well, having completed his GED and taken other courses in recent years.  (Ex. G-002).

### C.  Reducing Rodgers' Sentence would Eliminate the Co-Defendant Disparity that has Developed

Under 18 U.S.C. §3553(a)(6), "[t]he court, in determining the particular sentence to be imposed, shall consider— ... (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct..."  While the Sixth Circuit has found that this §3553(a)(6) clause refers to a review of similarly situated defendants on a national scale, "[a] district judge, however, may exercise his or her discretion and

determine a defendant's sentence in light of a co-defendant's sentence." <u>United States v. Simmons</u>, 501 F.3d 620, 624 (6th Cir. 2007).  Rodgers requests that the Court do just that here, and consider the effect of co-defendant disparity within the context of this motion, particularly between Rodgers and co-defendant Raynard Crowe.

When Rodgers was sentenced, he was sentenced to 116 months on Counts 2 and 4, with 84 months on Count 3 running consecutive to Counts 2 and 4. (Judgment, R. 126, Page ID#457).  As reviewed today, this 200 month sentence after a plea of guilty has become considerably disparate to the current 132 month sentence of the convicted-after-trial and alleged leader, Raynard Crowe.

When both Rodgers and Crowe were originally sentenced, there was no co-defendant disparity – Rodgers' 200 month sentence was substantially less (by comparison) to Crowe's original sentence of 535 months.  Crowe went to trial, and was convicted of multiple §924(c) offenses (among others).  At trial, the Government's position was that Crowe was a leader of this alleged conspiracy, (Tr. Crowe Sent., R. 200, Page ID#2018), and as the Court noted, apparently also found by the jury: "... I think it's clear the jury found that he was a leader...".  (<u>Id</u>.).

But things changed greatly for Crowe when this Court granted him relief in a subsequent motion to vacate under 28 U.S.C. §2255.  Relief was granted, in part,

18

on ineffectiveness grounds for the failure of his sentencing and appellate counsel

to challenge the flawed jury instructions for Crowe's Count 3 §924(c) brandishing

offense under <u>Alleyne v. United States</u>, 570 U.S. 99, 133 S.Ct. 2151 (2013) and

<u>Rosemond v. United States</u>, 572 U.S. __, 134 S.Ct. 1240 (2014), which were

released just prior to his sentencing and during the pendency of his appeal,

respectively.  (Crowe Order, R. 282, Page ID#3109-3115).  As a result, this Court

ordered <u>de novo</u> resentencing.  (<u>Id</u>., Page ID#3116).

On resentencing, this Court reduced the extra two years applied to Crowe's

brandishing §924(c) offense, and also applied the since enacted First Step Act

such that the second §924(c) offense was subject to a 5 year sentence, rather than a

25 year second or subsequent sentence previously applicable prior to the

enactment of the Act.  First Step Act of 2018, 115 Pub. L. 391 (2018), §403.  The

Court further reduced Crowe's guideline sentence below the revised range (of

121-151 months) to 12 months concurrent on the non-§924(c) counts[2] and

imposed an aggregate sentence of 132 months.  (Opinion, R. 287, Page ID#3138-

---

[2] The Government appealed the ruling in <u>Crowe</u>, and it is scheduled for oral argument on October 21, 2020.  <u>United States v. Crowe</u>, 6th Cir. No. 19-2249, R. 28.  In the interim, other Courts have continued to hold the First Step Act applicable on resentencings, including the Seventh Circuit sitting <u>en banc</u>.  <u>United States v. Uriarte</u>, _F.3d_, 2020 WL 5525119 (7th Cir. 2020) (First Step Act §403 applicable in plenary resentencings after reversal and remand on direct appeal).

3148; Crowe Resent. Tr., R. 289, Page ID#3166; Crowe Am. Judgment, R. 288,

Page ID#3151).

The effect of all of this?  Rodgers, considered a minor participant by the

Government[3], now has a sentence 78 months more than Crowe, one of the alleged

leaders.  Rodgers requests, pursuant to §3553(a)(6), that the Court use its

discretion to address his sentence in the context of what is now a considerable co-

defendant disparity between Rodgers and Crowe.

> **D.** **The effect of <u>Dean v. United States</u>, 581 U.S. __, 137 S.Ct. 1170 (2017) on the Court's §3553(a) Discretion, Unavailable at Rodgers' Sentencing in 2012 is Another Extraordinary and Compelling Reason to Reduce His Sentence**

Important also is the development in how §924(c) sentences are now

considered within the context of an aggregate sentence.  At the time of Rodgers'

original sentencing in September of 2012, the law of the Circuit was <u>United States</u>

---

[3] Rodgers' §3B1.2(b) minor participant 2 level reduction in the plea agreement was never effectuated in his final guideline range, since the total offense level was based on his status as a Career Offender under §4B1.1(b)(3), (c)(3).  (Plea Agreement, R. 221, Page ID#2225-2229).

And, while some recent Sixth Circuit litigation called into question whether Rodgers still had the requisite two prior convictions under §4B1.1(a) to qualify as a Career Offender, specifically as to his prior Michigan controlled substance delivery / manufacturing convictions, a recent Sixth Circuit opinion has determined otherwise.  See, <u>United States v. Havis</u>, 927 F.3d 382 (6th Cir. 2019); <u>United States v. Thomas</u>, 969 F.3d 583, 584-585 (6th Cir. 2020).

v. Franklin, 499 F.3d 578, 586 (6th Cir. 2007), which held that sentencing courts were to consider a predicate sentence as if an associated and mandatory §924(c) sentence had no bearing on it: "The sentencing court must determine an appropriate sentence for the underlying crimes without consideration of the § 924(c) sentence." But since Rodgers was sentenced, Franklin was abrogated by the Supreme Court in Dean v. United States, 581 U.S. __, 137 S.Ct. 1170 (2017), which expanded the discretion given to courts in these situations. "Nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." Dean, 137 S.Ct. at 1176-1177.

As the §3553(a) factors are considered herein, Rodgers submits that the discretion afforded the Court by Dean, unavailable the last time around, additionally warrants a reduction in his 116 month guideline sentence.

### E.    Loss of Caretaking Support and Family Circumstances

Since family circumstances can inform §3553(a) analysis in the form of a variance, Rodgers asks that the Court consider those circumstances for his family. United States v. Husein, 478 F.3d 318, 329-30 (6th Cir. 2007) ("[F]amily circumstances can form the basis of either a Guidelines-authorized departure or a non-Guidelines, §3553(a)-based departure, also known as a variance."). Pertinent

21

here is the still-recent loss of Mr. Rodgers' wife, Joselyn, who passed away in December, 2018 and the related impact on their twin sons. When Rodgers was sentenced, his twins were less than 1 year old. (PSIR, pp. 15-16, ¶60). Now, at the age of 9, their mother is deceased and their father is in prison. If released, Rodgers hopes to rejoin his boys and live with them at his stepson's residence.

As Husein noted, supra, departures are relevant here as well, particularly when there is a loss of caretaking support. U.S.S.G. §5H1.6. While §5H1.6 states that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted", there are exceptions particularly when "[t]he loss of caretaking or financial support substantially [would] exceed[] the harm ordinarily incident to incarceration for a similarly situated defendant." U.S.S.G. §5H1.6, App. Note 1.B(ii).

Here, there has been a loss of caretaking support for Rodgers' twins with the passing of his wife. This is but one more reason, considered in the context of §3553(a), to reduce his sentence.

### F. The Percentage of Time Served Is Not a Barrier to Relief; the Court Could Order Home Confinement on Supervised Release

While Rodgers has served approximately two thirds of his sentence, such a percentage is not a barrier to release under §3582(c)(1)(A). There are numerous

Case 2:11-cr-20481-AJT-MKM   ECF No. 322, PageID.4152   Filed 10/13/20   Page 24 of 27

other examples of courts granting release even when a substantial term of incarceration remains, or defendant has served substantially less, percentage wise, than Rodgers. Note also this Court's opinion (issued May 21, 2020) in <u>Loyd v. United States</u>, 2020 WL 2572275 (E.D. Mich. 2020). There, defendant had been convicted of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§841(a)(1) and 846 and sentenced to 120 months in March, 2017. <u>Id</u>., *1. Loyd's medical conditions included: "severe obesity, hypertension, and being immunocompromised from cortisone hip injections". <u>Id</u>., 3. Immediate release to begin a term of supervised release was granted, notwithstanding his distribution conspiracy conviction and a ten year sentence being imposed only three years ago. <u>Id</u>., *5. See also, e.g., <u>United States v. McConico</u>, 2020 WL 4431424 at *1 (E.D. Mich. 2020) (motion granted; nearly 6 years remaining on 10 year sentence for distribution resulting in death).

Additionally, if the Court is inclined to grant release, it could add a significant term of home confinement (with the ability for work release) to Rodgers's sentence. Consider the somewhat analogous <u>United States v. Jackson</u>, 2020 WL 1955402 (S.D. Texas 2020), where the defendant was released after serving only approximately one third of his sentence. The defendant in <u>Jackson</u> was suffering from "end-stage kidney disease" among other high risk category

23

ailments.  After having been convicted of aiding and abetting two offenses, a

Hobbs Act robbery and a firearm offense under 18 U.S.C. §924(c), he was

sentenced to 154 months.  Id., *1.  His release date was August, 2028.

Acknowledging the considerable time left on his sentence, the Court imposed

additional home detention time as a special condition upon release from prison.

Jackson, 2020 WL 1955402 at *6.  In short, Jackson's two violent offenses and

more than eight years remaining did not preclude relief.

Similarly here, the Court could add a term of home detention to Rodgers's

special conditions of supervised release that would allow for Rodgers to gain

employment, education and vocational training, but also account for what would

be a substantial reduction in his sentence.  Courts in this District have similarly

added home confinement periods to supervised release upon granting a motion to

reduce sentence.  See, e.g.,  United States v. Fields, 2020 WL 5848992 at *1 (E.D.

Mich. 2020) ("The Court adds as a condition of that supervised release that

[defendant] shall be subject to home confinement (with electronic monitoring) at

her residence for four months. During that period of home confinement,

[defendant] shall not leave her residence other than for employment, job

training..."); United States v. Clement, U.S.D.C. E.D. Mich. No. 18-20151, R. 396,

Page ID#1894 (compassionate release motion granted; home confinement (with

work release) added); <u>United States v. Amarrah</u>, __F.Supp.3d__, 2020 WL

2220008 at *8 (E.D. Mich. 2020) (home confinement added to special conditions).

**Conclusion and Relief Requested**

For all the above reasons, Desmond Reginald Rodgers requests the Court

grant his motion and modify his term of incarceration to time served, or in the

alternative, to time served with an additional special condition of home

confinement on supervised release.

Respectfully submitted,

By: <u>s/ John F. Clark</u>
John F. Clark (P69677)
Attorney for Defendant
Desmond Reginald Rodgers
Clark Law Firm PLLC
645 Griswold, Suite 2200
Detroit, MI 48226
Ph: 313-962-2233
Date: October 13, 2020        clarkjf1@gmail.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,

vs.

DESMOND REGINALD RODGERS,

                  Defendant.

Criminal No. 11-cr-20481

Hon. Arthur J. Tarnow

_____/

## CERTIFICATE OF SERVICE

I certify that on October 13, 2020, I electronically filed the foregoing

document, **Desmond Reginald Rodgers' Motion for Compassionate Release**

**under 18 U.S.C. §3582(c)(1)(A)**, with the Clerk of the Court using the ECF

system, which will send notification of such filing to Danielle Asher, Esq.,

Assistant U.S. Attorney, and all ECF-registered counsel of record.

Respectfully submitted,

By: s/ John F. Clark
John F. Clark (P69677)
Attorney for Defendant
Desmond Reginald Rodgers
Clark Law Firm PLLC
645 Griswold, Suite 2200
Detroit, MI 48226
Ph: 313-962-2233
clarkjf1@gmail.com

Date: October 13, 2020