UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DESMOND REGINAL RODGERS,

    Defendant.
_____/

Criminal Case No. 11-20481

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING DESMOND REGINALD RODGERS'S MOTION FOR COMPASSIONATE RELEASE [322] AND DENYING AS MOOT RODGERS'S SUPPLEMENTAL MOTION TO VACATE [320]**

On March 21, 2012, defendant-petitioner, Desmond Reginal Rodgers, pleaded guilty to bank robbery, in violation of 18 U.S.C. § 2113; using or carrying a firearm during a federal crime of violence, in violation of 18 U.S.C. § 924(c); and pharmacy robbery, in violation of 18 U.S.C. § 2118. (ECF No. 121, PageID.409). The Court sentenced Rodgers to 200 months in prison on September 6, 2012. (ECF No. 126, PageID.457). On June 30, 2020, the Court appointed the Federal Community Defender to assist Rodgers with an unspecified petition under the First Step Act. (ECF No. 295). Following a status conference on September 28, 2020, Rodgers filed a Motion for Compassionate Release. (ECF No. 322). The Court heard arguments on the Motion [322] on October 30, 2020.

For the reasons stated on the record and below, Rodgers's Motion [322] is **GRANTED**, and his sentence is reduced to time served.

## BACKGROUND

Rodgers was born in Southfield, Michigan in 1972. (PSR ¶ 56). He was primarily raised by his mother, though her addiction often kept her away for significant periods of time. (*Id.*). In December 2018, Rodgers's wife of sixteen years passed away, leaving her and Rodgers's two young children to be raised by Rodgers's stepson. (ECF No. 322, PageID.4151). They currently reside in Redford. (PSR ¶ 60). Rodgers also has an adult child from a prior relationship; she lives in Detroit. (PSR ¶ 59).

Rodgers, who has struggled with substance abuse for much of his life, did not complete High School and has been entangled in the criminal legal system since he was fifteen. (PSR ¶¶ 58, 68, 70). Other than the instant offense, however, the entirety of Rodgers's criminal record is more than two decades old and stems from crimes committed by Rodgers in his early- to mid-twenties. (PSR ¶¶ 45-48).

Rodgers was arrested following his participation as a lookout and getaway driver in two robberies: a bank robbery on May 18, 2011, and a pharmacy robbery on June 18, 2011. (PSR ¶¶ 7-11). Firearms were carried during the course of both robberies and the losses totaled just over one hundred thousand dollars. (PSR ¶ 17).

Rodgers is currently forty-seven years old, incarcerated at USP Lee, and scheduled for release on January 4, 2026. *Find an Inmate*, FED. BUREAU PRISONS,

https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 46303-039) (last visited October 31, 2020).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

> **(A)** [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> **(i)** extraordinary and compelling reasons warrant such a reduction.
> [. . .]
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).

A. Exhaustion

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). On September 11, 2020, Rodgers submitted an email, which the Warden of USP Lee interpreted as a request for compassionate release. (ECF

No. 323-2, PageID.4165-66; ECF No. 323-3, PageID.4168). The Government concedes that Rodgers has exhausted his administrative remedies with respect to his medical issues. (ECF No. 325, PageID.4222).

Accordingly, "[t]he Court now has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether [Rodgers] poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors." *Crider v. United States*, No. 01-81028-1, 2020 U.S. Dist. LEXIS 133233, at *4 (E.D. Mich. July 28, 2020).

B. Extraordinary and Compelling Reasons for Release

In order to ascertain whether there are extraordinary and compelling reasons to release Rodgers, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Application Notes to the relevant policy statement provide the following:

> **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.—**
>   **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>   **(ii)** The defendant is—
>     **(I)** suffering from a serious physical or medical

> > condition,
> > **(II)** suffering from a serious functional or cognitive impairment, or
> > **(III)** experiencing deteriorating physical or mental health because of the aging process,
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> 
> [. . .]
> 
> **(D) Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13. Here, Rodgers has presented "Other Reasons" in combination with "Medical Condition[s]" to warrant compassionate release.

Rodgers suffers from obesity, hypertension, and prediabetes. (ECF No. 323-4, PageID.4177-79, 4189). According to the CDC, "[h]aving obesity, defined as a body mass index (BMI) between 30 kg/m2 and <40 kg/m2 . . . , increases your risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/HN8S-989E] (last updated Oct. 16, 2020). Hypertension is similarly recognized as a risk factor. *See id.* Finally, although prediabetes is not listed as a risk factor by the CDC, diabetes is listed. *See id.* And because it is well established that the risk of severe illness from COVID-19 increases when a person has multiple underlying conditions, "[c]ourts have found that the combination of prediabetes and obesity [is] sufficient to warrant [compassionate] release." *United States v. Andrade*, No. 16-20751, 2020 U.S. Dist.

LEXIS 166463, at *8-9 (E.D. Mich. Sept. 11, 2020) (alteration in original) (quoting *United States v. Readus*, No. 16-20827-1, 2020 U.S. Dist. LEXIS 89351, at *6 (E.D. Mich. May 21, 2020)).

Rodgers's risk is also exacerbated by the current outbreak of COVID-19 at USP Lee, which has ballooned in the three weeks since Rodgers filed his motion. *Compare* (ECF No. 322, PageID.4143) (six positive cases as of October 8), *with COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/C3YJ-QR8L] (last updated Oct. 30, 2020) [hereinafter *COVID-19 Testing*, BOP] (sixty-six positive cases as of October 30). Indeed, the outbreak may be even worse than is apparent from these numbers because "USP Lee [continues to] seriously undertest[] its inmates." *United States v. Bell*, No. 04-cr-20033, 2020 U.S. Dist. LEXIS 145746, at *6 (C.D. Ill. Aug. 13, 2020); *see COVID-19 Testing*, BOP (showing that fewer than half of inmates at USP Lee have been tested as of October 30). Accordingly, the Court finds that there are extraordinary and compelling reasons for Rodgers's release.

<u>Dangerousness</u>

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In arguing that Rodgers continues to be dangerous, the Government relies primarily upon Rodgers's criminal history, his

high-risk PATTERN score, and his participation in fight in 2013. (ECF No. 325, PageID.4232-33, 4238). The Court will examine each of these in turn.

Rodgers's criminal history is indeed concerning, specifically his failure to abide by conditions of parole in the past. The Court is cognizant, however, that, with the exception of the instant offense, the entirety of Rodgers's criminal history, including his parole violations, is from his early- to mid-twenties. (PSR ¶¶ 45-48). Today, he is only a few years shy of fifty, and statistically less likely to reoffend than he was as a younger man, especially if under the care of the U.S. Probation Department. (ECF No. 323-5, PageID.4198); *see generally* U.S. SENT'G COMMISSION, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf [https://perma.cc/M39D-YQAN]. Moreover, since entering custody nearly a decade ago, Rodgers has completed the BOP's Challenge Program, the Drug Education Program, a violence-prevention program, and several educational programs, including earning his GED. (ECF No. 323-5, PageID.4198). He has also received good employment evaluations, even working his way to a leadership role in his kitchen job at USP Lee.[1] (*Id.*). These efforts, particularly his completion of the nine-month Challenge Program, which, "[i]n addition to treating substance use disorders and mental illnesses, . . . addresses criminality, via cognitive-

---

[1] The fact that Rodgers is no longer working in the kitchen, apparently due to a dispute regarding his paltry BOP wages, does not alter the Court's approval of his overall positive employment record. *See* (ECF No. 322, PageID.4146).

behavioral challenges to criminal thinking errors," are persuasive evidence of rehabilitation. FED. BUREAU PRISONS, DIRECTORY OF NATIONAL PROGRAMS 10 (2017), https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf [https://perma.cc/XG2N-BAMU].

Additionally, while the Government is correct that the BOP has rated Rodgers a "high risk" of recidivism using its PATTERN tool, this assessment is hardly infallible. Indeed, several experts on risk assessment instruments have cautioned that "a number of key assumptions and policy choices made in the design of [the PATTERN] tool [are] not verifiable or inadequately supported." Brandon L. Garrett & Megan Stevenson, *Open Risk Assessment*, 38 BEHAV. SCIS. & L. 279, 280 (2020); *see also* P'SHIP ON AI, ALGORITHMIC RISK ASSESSMENT AND COVID-19: WHY PATTERN SHOULD NOT BE USED 2 (2020), https://www.partnershiponai.org/wp-content/uploads/2020/04/Why-PATTERN-Should-Not-Be-Used.pdf [https://perma.cc/*2LNP*-QXM9] (explaining that "PATTERN was not developed with the intent of informing anything akin to COVID-era decisions, nor was it validated on data that reflects the present social and economic landscape"). Indeed, "due to both demographic differences between the Black and White federal inmate populations and racial bias in the data used to develop, validate, and score the tool, the . . . use of PATTERN is likely to contribute to significant unjustified racial disparities." *Id.* Accordingly, and particularly in light of Rodgers's

sparse disciplinary record, consisting solely of an incident in mid-2013, the Court finds that he will not pose a danger upon release (ECF No. 323-6, PageID.4203).

<u>Section 3553(a) Factors</u>

The last step a District Court contemplating a motion for compassionate release must take is to consider the sentencing factors provided by 18 U.S.C. § 3553(a). Those are as follows:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
>   **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   **(B)** to afford adequate deterrence to criminal conduct;
>   **(C)** to protect the public from further crimes of the defendant; and
>   **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for—
>   **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>   [. . .]
> **(5)** any pertinent policy statement—
>   [. . .]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

The Court's consideration of these factors is demonstrated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the October 30, 2020 hearing.

Rodgers's criminal record and the nature and circumstances of his offense made it clear to the Court that he was dangerous at the time of sentencing. Nearly a decade of incarceration, however, has given him substantial opportunity to rehabilitate. Rodgers's accomplishments while incarcerated, combined with his clean disciplinary record for the past seven years, demonstrate to the Court that he has taken that opportunity seriously, that his sentence has promoted his respect for the law, and that he has been sufficiently deterred from future criminal activity. Additionally, the Court finds that, to the extent that Rodgers's sentence had a deterrent effect on others, that effect was felt at the time Rodgers was apprehended and will not be impacted by modification of his sentence.

Finally, the Court also considers, to a lesser extent, the fact that certain circumstances have changed since Rodgers was first incarcerated. First, one of Rodgers's co-defendants, Raynard Crowe, who played a more substantial role than Rodgers in the robberies, was resentenced in 2019 by this Court to 132 months. (ECF No. 288, PageID.3151; PSR ¶¶ 7-11, 16). While Crowe's prior sentence of 535 months was originally much longer than Rodgers's sentence of 200 months—reflecting, among other things, the fact that Crowe's conduct was more serious—it is now substantially shorter, suggesting at least some disparity in Rodgers's current sentence. *See United*

*States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("[A]lthough § 3553(a) does not require district courts to consider sentencing disparities among co-defendants, it does not prohibit them from doing so." (alteration in original) (quoting *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006))). Second, Rodgers's wife passed away in 2018, leaving his twins to be raised by his stepson. (ECF No. 322, PageID.4151). Though the Court does not consider whether this constitutes an extraordinary and compelling family circumstance under the Application Notes to U.S.S.G. 1B1.13, the Court does take it into account in its consideration of Rodgers's history and characteristics under 18 U.S.C. § 3553(a)(1).

In light of the above considerations, the Court finds that a sentence reduction to time served is consistent with the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Rodgers's Motion for Compassionate Release [322] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Rodgers's Supplemental Motion to Vacate [320] is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that Rodgers be **IMMEDIATELY RELEASED** to begin his three-year term of **SUPERVISED RELEASE**, as outlined by the September 6, 2012 Judgment (ECF No. 126, PageID.458), including the following Special Conditions:

**The defendant shall undergo a strict fourteen-day quarantine upon his release and shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.**

**If deemed necessary by the Probation Department, the defendant shall participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise the defendant's participation in that program (provider, location, modality, duration, intensity, etc.).**

**If deemed necessary by the Probation Department, the defendant shall participate in an anger management program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise the defendant's participation in that program (provider, location, modality, duration, intensity, etc.).**

**SO ORDERED**.

Dated: November 2, 2020

<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Senior United States District Judge